UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN
_____

In re

DARRELL D. EDWARDS,

Debtor.
_____

DARRELL D. EDWARDS,

                              Plaintiff,

v.

DEUTSCHE BANK NATIONAL TRUST COMPANY
AS TRUSTEE FOR MORGAN STANLEY ABS
CAPITAL I INC. TRUST 2006-HE4,
MORGAN STANLEY ABS CAPITAL I INC.,
MORGAN STANLEY MORTGAGE CAPITAL INC.,
DECISION ONE MORTGAGE COMPANY, LLC, and
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,

                              Defendants.

Case No. 11-23195

Chapter 13

Adversary No. 11-2505

_____

MEMORANDUM DECISION ON DEFENDANTS' MOTION TO DISMISS ADVERSARY
PROCEEDING, DEBTOR'S OBJECTION TO MOTION FOR RELIEF FROM THE
AUTOMATIC STAY, AND DEBTOR'S OBJECTION TO PROOF OF CLAIM NO. 5
_____

The debtor, Darrell Edwards, brought this Complaint to Object to Claim Number 5 and for Declaratory Judgment for Damages for Filing False Proof of Claim, for Determination of Standing Issues and for Failure to Perfect Mortgages on Residential Real Property and to Determine Validity and Enforceability of the Defendants' Lien and to Determine Status or Expunge Claims. Deutsche Bank National Trust Company as Trustee for the Morgan Stanley ABS Capital I Inc. Trust 2006-HE4 and Mortgage Electronic Registration Systems, Inc., moved, pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint for failure to state a claim upon

which relief can be granted. The debtor also filed Objections to Deutsche Bank's Motion for Relief from the Automatic Stay as well as the bank's Proof of Claim. The parties filed briefs supporting their respective positions and the Court took the matter under advisement.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (G) and (K), and the Court has jurisdiction under 28 U.S.C. § 1334.

BACKGROUND

The debtor filed a chapter 13 petition on March 11, 2011. Previously, on February 22, 2006, the debtor had financed the purchase of his residence with a $91,440.00 adjustable rate loan with Intervale Mortgage Corporation. Intervale was the named lender on the Note which secured the first Mortgage, and the named mortgagee, Mortgage Electronic Systems, Inc. (MERS), was "acting solely as nominee for Lender and Lender's successors and assigns."

The Note was specially endorsed by Intervale under company seal and made payable to Decision One Mortgage Company, LLC, a servicing agent for Intervale, by way of two undated endorsements stamped under the name of Damon Merritt, Assistant Secretary of Decision One. Thereafter, Decision One Mortgage Company, LLC, under company seal, endorsed the Note in blank.

An Assignment of Mortgage dated August 24, 2010, assigned the Mortgage from MERS as nominee for Intervale to Deutsche Bank Trust Company, as Trustee for Morgan Stanley ABS Capital I Inc. Trust 2006-HE4. The assignment was endorsed by Amy Rivard, Monique Santos, and Herman Kennerty. The assignment was executed approximately three years after Intervale

2

ceased operating and over four years after the establishment of the Morgan Stanley Trust[1] and after the cutoff date for inclusion of mortgages in the trust established by the Pooling and Servicing Agreement of said trust.

The debtor entered into a Loan Modification Agreement with Deutsche Bank's servicer, America's Servicing Company, in January 2010.[2] The debtor does not dispute that Deutsche Bank National Trust Company currently possesses the Note endorsed in blank. Deutsche Bank filed Proof of Claim No. 5 on April 12, 2011, asserting a security interest in the debtor's real property, with a total obligation of $123,066.11, including an arrearage amount of $14,835.73.

After the debtor failed to make postpetition mortgage payments, Deutsche Bank moved for relief from the automatic stay on June 17, 2011. The debtor opposed the requested relief, objected to the proof of claim, and filed an adversary proceeding challenging Deutsche Bank's standing in these bankruptcy proceedings.

ARGUMENTS

The debtor disputes the debt and denies that Deutsche Bank or the Morgan Stanley Trust hold a valid and enforceable secured claim against the debtor's residence. The debtor argues the

---

[1] The Morgan Stanley Trust is a pooled trust created for the purpose of pooling mortgage loans and then selling certificates or bonds to investors. The Trust's PSA is dated June 1, 2006, and the Prospectus Supplement is dated May 12, 2006. *See* Morgan Stanley ABS Capital I Inc. Trust 2006-HE4 Pooling and Servicing Agreement dated June 1, 2006, Morgan Stanley ABS Capital I Inc., Depositor; Wells Fargo Bank, NA, Servicer and Custodian; NC Capital Corporation, WMC Mortgage Corp., and Decision One Mortgage Company, LLC, Responsible Parties; Deutsche Bank National Trust Company, Trustee; LaSalle Bank NA, Custodian, at http://www.sec.gov/Archives/edgar/data/1362555/000091412106003669/ms5032668-ex4.txt.

[2] America's Servicing Company is servicing the Mortgage and collecting current payments, as evidenced by the attachments to Proof of Claim No. 5. Nevertheless, the proof of claim was filed in the name of the holder, Deutsche Bank National Trust Company.

claimant lacks standing and the status of a real party in interest because the Note is not a negotiable instrument and the documents attached to Deutsche Bank's proof of claim do not show any transfer or assignment of the debtor's Mortgage and Note to Deutsche Bank. Additionally, the transfer of the Note and Mortgage were not completed in conformance with the trust documents relating to the Morgan Stanley ABS Capital I Inc. Trust 2006-HE4. The debtor alleges that, as of the date of the filing of the petition, the Note and Mortgage have not been properly assigned to any party other than Intervale and MERS. According to the debtor, nothing in the documents show that Decision One had any authority under a valid power-of-attorney or other appropriate document to endorse the Note on behalf of Intervale. Furthermore, there is no documentation to show that the individuals executing the Assignment of Mortgage had any proper authority to do so. As a result, Deutsche Bank and the Morgan Stanley Trust lack proper standing or the status as a party in interest and are estopped from asserting any claim in this case, either secured or unsecured.

  Deutsche Bank and MERS argue the complaint fails to state a claim upon which relief can be granted and must be dismissed in its entirety because Wisconsin's negotiable instrument statutes and common law conclusively establish Deutsche Bank's right to enforce the Note and Mortgage and because the debtor lacks standing to assert any alleged technical deficiencies with the transfer of the Note and Mortgage to the trust as purportedly required by the trust documents because he is neither a party nor third party beneficiary of the PSA or Prospectus. According to the bank, controlling negotiable instrument law, *see* Wis. Stats. §§ 403.205, 403.301, 403.306, & 403.308, does not require a dated endorsement, and the subject endorsements are presumed authentic and authorized. Furthermore, "in an action to enforce the obligation of a party to pay

4

Case 11-02505-svk    Doc 13    Filed 12/23/11    Page 4 of 15

the instrument, the obligor may not assert against the person entitled to enforce the instrument a defense." Wis. Stats. § 403.305(3). Likewise, Deutsche Bank possesses the Note endorsed in blank and is therefore the holder and entitled to enforce the Note under the common law doctrine of Equitable Assignment.

## DISCUSSION

The defendants have moved to dismiss the Complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). Likewise,

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft*, 129 S.Ct. at 1950. Generally, in ruling on a motion to dismiss under Rule 12(b)(6), the Court may consider only the complaint, but since the plaintiff referred to documents in the complaint, and the documents are central to the claims at issue, the Court may consider them as part of the pleadings. Fed. R. Civ. P. 10(c).

Thus, this Court must consider whether the allegations in the complaint – namely, that the assignment of the Mortgage by MERS, as nominee, was not effective to assign the rights and

5

interest of Intervale, the Lender under the Mortgage, to Deutsche Bank, the current holder of the Note – state a claim upon which relief can be granted. In related matters, this Court must also determine whether or not Deutsche Bank has standing to both assert a claim in the case and obtain relief from the automatic stay.

*Standing of the Debtor*.

Deutsche Bank argues the debtor's causes of action must be dismissed because he lacks standing to invoke the provisions of the Pooling and Servicing Agreement or Prospectus because he is neither a party nor third party beneficiary of those documents. *See Kelly v. Deutsche Bank Nat'l Trust Co.*, 789 F. Supp. 2d 262 (D. Mass. 2011) (to recover as third-party beneficiary in Mass, plaintiff must show he was intended beneficiary of contract). In *Kelly* the district court, applying Massachusetts law, dismissed a borrower's challenge to the lender's foreclosure power by claiming that the lender was not a valid assignee. Finding that the borrower in *Kelly* was neither a party to, nor a third-party beneficiary of, the assignment of mortgage agreement upon which he relied to challenge the lender's foreclosure power, the court dismissed the borrower's cause of action for lack of standing to sue. *Id*. at 267-68; *see also In re Correia*, 452 B.R. 319, 324-25 (B.A.P. 1st Cir. 2011) (finding debtors lacked standing to challenge validity of mortgage assignment, based upon alleged noncompliance with pooling and servicing agreement); *In re Smoak*, __ B.R. __, 2011 WL 4502596, *5-6 (Bankr. S.D. Ohio Sept. 28, 2011) (holding debtors under securitized notes lacked standing to raise violations of PSA); *In re Almeida*, 417 B.R. 140, 149 n. 4 (Bankr. D. Mass. 2009) (noting holder of second mortgage on property was "not a third party beneficiary of the PSA, and, ironically, he would appear to lack standing to object to any breaches of the terms of the PSA. ... [instead] the investors who bought securities based upon the

pooled mortgages would be the parties with standing to object to any defects in those mortgages resulting from any failure to abide by the express provisions of the PSA"). In *Livonia Property Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 717 F. Supp. 2d 724, 748 (E.D. Mich. 2010), *aff'd*, 399 Fed. Appx. 97 (6th Cir. 2010), the district court found the plaintiff lacked standing under Michigan law to assert any breaches in the terms of the contracts between the assigning entities, explaining:

> Plaintiff cleverly argues that it is not attempting to avoid its obligations, but instead is challenging Defendant's standing to foreclose by advertisement. But, Plaintiff's arguments reach far beyond challenging Defendant's compliance with the statutory mandates, and extend into analyzing whether there are "valid contract[s] for each link in the chain of title" and whether the parties to those contracts complied specifically with their terms. In other words, Plaintiff seeks to challenge whether each and every entity that ever held an interest in Plaintiff's Note and Mortgage complied to the letter with the terms of each and every contract between it and its successor. These are *exactly* the types of challenges that Plaintiff, as a stranger to those contracts, lacks standing to assert.

*Id*. at 748-49.

In Wisconsin, a party lacks standing to bring a contract claim if it is neither a party to nor a third party beneficiary of the subject contract. *See Schilling v. Employers Mut. Cas. Co.*, 212 Wis. 2d 878, 886, 569 N.W.2d 776 (Ct. App. 1997) (only a party or third-party beneficiary has standing to raise a contract claim). The person claiming third party beneficiary status must show that the contracting parties entered into the agreement for the direct and primary benefit of the third party, either specifically or as a member of a class intended to benefit from the contract. *See id.* at 886-87, 569 N.W.2d at 780. An indirect benefit incidental to the primary purpose of the contract is insufficient to confer third party beneficiary status. *See id.* at 887, 569 N.W.2d at 780. The debtor was neither a party to the pooling or servicing agreements nor a potential third party beneficiary of those agreements, so his standing to challenge the assignments is lacking.

7

Aside from the fact that the debtor is without standing to seek relief for violations of the Pooling and Servicing Agreement, those alleged violations are irrelevant to Deutsche Bank's standing to enforce the Note under the Uniform Commercial Code, as discussed below.

*Applicability of the Uniform Commercial Code.*

The bank contends the debtor's allegation that the Note has not been properly endorsed fails as a matter of law and his claims premised thereon must be dismissed. The debtor, in turn, argues the Note is not a negotiable instrument because it is not an unconditional promise to pay, as required by Wis. Stats. § 403.104.[3] Specifically, the debtor claims that the following provision negates the requirement of an unconditional promise to pay a fixed amount of money:

> I have the right to make payments of principal at any time before they are due. A payment of principal is only known as a "prepayment." When I make a prepayment, I will tell the note holder in writing that I am doing so.

(Note dated February 22, 2006, Section 5, Borrower's Right to Prepay). Because the Note provides the borrower with the right to make prepayments and requires the borrower to advise

---

[3](1) Except as provided in subs. (3) and (4), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if all of the following apply:
    (a) It is payable to bearer or to order at the time that it is issued or first comes into possession of a holder.
    (b) It is payable on demand or at a definite time.
    (c) It does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain any of the following:
        1. An undertaking or power to give, maintain or protect collateral to secure payment.
        2. An authorization or power to the holder to confess judgment or realize on or dispose of collateral.
        3. A waiver of the benefit of any law intended for the advantage or protection of an obligor.
Wis. Stats. § 403.104(1).

the note holder in writing when doing so, the debtor contends the payment is conditioned on an action by the borrower; the Note's requirement that the debtor act in addition to the payment of money causes the instrument to fail as a negotiable instrument under Wisconsin law. Additionally, according to the debtor, provisions in the Mortgage allowing the borrower, in the event the lender overcharges interest or other loan charges, to demand a withholding or a refund of the principal, constitute express conditions in regard to the borrower's promise to pay, in contravention to Wis. Stats. § 403.106.[4] (*See* Mortgage, Section 14, Loan Charges).

In reviewing the promissory note executed by the debtor, there is no question that elements of negotiability set forth in Wis. Stats. § 403.104 have been satisfied. The Note

---

[4] (1) (a) Except as otherwise provided in this section, for the purposes of s. 403.104 (1), a promise or order is unconditional unless it states any of the following:
   1. An express condition to payment.
   2. That the promise or order is subject to or governed by another writing.
   3. That rights or obligations with respect to the promise or order are stated in another writing.
   (b) A reference to another writing does not of itself make the promise or order conditional.
(2) A promise or order is not made conditional by a reference to another writing for a statement of rights with respect to collateral, prepayment or acceleration or because payment is limited to resort to a particular fund or source.
(3) If a promise or order requires, as a condition to payment, a countersignature by a person whose specimen signature appears on the promise or order, the condition does not make the promise or order conditional for the purposes of s. 403.104 (1). If the person whose specimen signature appears on an instrument fails to countersign the instrument, the failure to countersign is a defense to the obligation of the issuer, but the failure does not prevent a transferee of the instrument from becoming a holder of the instrument.
(4) If a promise or order at the time that it is issued or first comes into possession of a holder contains a statement, required by applicable statutory or administrative law, to the effect that the rights of a holder or transferee are subject to claims or defenses that the issuer could assert against the original payee, the promise or order is not thereby made conditional for the purposes of s. 403.104 (1); but if the promise or order is an instrument, there cannot be a holder in due course of the instrument.
Wis. Stats. § 403.106.

contains the debtor's written promise to pay a fixed amount of money; it is payable at a definite time, that is on a monthly schedule; and the Note does not state any other undertaking. The ability of the debtor to avail himself of additional favorable payment options or receive compensation in the event of accounting errors does not destroy the negotiability of the instrument. *Cf. In re V.O.C. Analytical Labs, Inc.*, 263 B.R. 156 (S.D. Fla. 2001) (promissory note whose payment was contingent on several future conditions, including covenants not to compete and indemnity obligations and potential credits based on several enumerated contingencies related to underlying contract between parties, was not "unconditional promise to pay," and did not qualify as "negotiable instrument"). Likewise, providing information regarding a prepayment to the lender is not an express condition to payment or subject to "another writing" within the meaning of the statute, Wis. Stats. § 403.106(1)(a). Therefore, the Note is a negotiable instrument.

      The Court having found the Note is a negotiable instrument under the Uniform Commercial Code, the debtor alternatively argues there is nothing to show that the parties signing the Assignment of Mortgage had proper authority to execute the assignment. Additionally, according to the debtor, the assignment was improper because one of the signatures was not notarized, and the other two signatures were notarized over a week after the date of the Assignment of Mortgage. The debtor further argues that the Court must look to the Pooling and Servicing Agreement to determine whether the Note was properly transferred, and proper transfer is necessary for enforceability by the transferee. According to the debtor, the PSA and the Prospectus show that Decision One Mortgage Company, LLC, was required to transfer the Note to Morgan Stanley Mortgage Capital, Inc., as the sponsor of the trust. In turn, Morgan Stanley

Mortgage Capital, Inc., was required to transfer the Note to Morgan Stanley ABS Capital, Inc., as depositor of the trust and the depositor would then transfer the Note to Deutsche Bank National Trust Company as the trustee. However, technical errors in transfer do not destroy the negotiability of the Note. Even if the Note did not make its way to the current holder in a timely and proper manner at every stage of its journey, it is enforceable by the holder.

The Uniform Commercial Code addresses issues pertaining to the transfer of and the right to the enforcement of negotiable instruments, including the following:

> "Person entitled to enforce" an instrument means the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument under s. 403.309 or 403.418(4). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

Wis. Stats. § 403.301. Likewise, a holder of an instrument means "[t]he person in possession of a negotiable instrument that is payable either to bearer or an identified person that is the person in possession." Wis. Stats. § 401.201(2)(km)1. Under Wis. Stats. § 403.109(3), an instrument payable to an identified person becomes payable to the bearer if it is endorsed in blank under Wis. Stats. § 403.205(2). Section 403.205(2), Wis. Stats., provides:

> If an endorsement is made by the holder of an instrument and it is not a special endorsement, it is a blank endorsement. If endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed.

Wis. Stats. § 403.205(2). Thus, the lateness of documentation of transfers from Intervale after it ceased operating or transfers to the Morgan Stanley Trust after the cutoff of accepting investments is of no consequence.

A holder in due course, such as Deutsche Bank in this case, is entitled to the protections

of section 403.305, Wis. Stats., including:

> [I]n an action to enforce the obligation of a party to pay the instrument, the obligor may not assert against the person entitled to enforce the instrument a defense, a claim in recoupment or a claim to the instrument under s. 403.306 of another person, but the other person's claim to the instrument may be asserted by the obligor if the other person is joined in the action and personally asserts the claim against the person entitled to enforce the instrument.

Wis. Stats. § 403.305(3).

Significantly for this case, Wisconsin's Commercial Code presumes the authenticity of the signatures on the Note and the authority to make them:

> (1) In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted *unless specifically denied in the pleadings*. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, *but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer* and the signer is dead or adjudicated incompetent at the time of trial of the issue of validity of the signature.

Wis. Stats. § 403.308(1) (emphasis added). While the debtor complains about the absence of written authority of persons signing documents, this is not an action to enforce the liability of the persons endorsing the instrument. Therefore, the authenticity of their signatures is properly presumed and is not subject to challenge by the debtor. *Id*. Importantly, the debtor does not contest his signature on the Note. The remaining signatures are presumed to be authentic and made by a person with authority to sign. As named mortgagee, and record title holder of the Mortgage, MERS was the only entity which could assign the Mortgage. Section 706.03(1m), Wis. Stats., only renders a conveyance without power of attorney ineffective "as against the purported principal."

Additionally, there is no requirement that an endorsement be dated. The relevant state

statute provides:

> "Endorsement" means a signature, other than that of a signor as maker, drawer or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of negotiating the instrument, restricting payment of the instrument or incurring the endorser's liability on the instrument, but regardless of the intent of the signor, a signature and its accompanying words is an endorsement unless the accompanying words, terms of the instrument, place of the signature or other circumstances unambiguously indicate that the signature was made for a purpose other than endorsement.

Wis. Stats. § 403.204(1). In sum, Deutsche Bank is entitled to enforce the Note because it is "the holder of the instrument," Wis. Stats. § 403.301, and the debtor has not disputed Deutsche Bank's holder status.[5]

*Applicability of the Common Law Doctrine of Equitable Assignment.*

Deutsche Bank argues that, as the holder of the Note, it is entitled to enforce the Note under the common law doctrine of Equitable Assignment. This doctrine recognizes that "[t]he note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." *Carpenter v. Longan*, 83 U.S. 271, 274 (1873). The debt is the principal thing, to which the security instrument is an incident thereof. *Cf. Doyon & Rayne Lumber Co. v. Nichols*, 196 Wis. 387, 390, 220 N.W. 181 (1928); *Mitchell Bank v. Schanke*, 268 Wis. 2d 571, 597, 676 N.W.2d 849, 858 (2004). Under this view, long established in Wisconsin law, the Mortgage is equitably assigned when the Note is endorsed and negotiated to its current holder.

The principle of equitable assignment was set out by Wisconsin's Supreme Court as far

---

[5] Certified copies of the recorded mortgage and assignment of mortgage are admissible proof of the execution of the original mortgage and the assignment of the Mortgage to Deutsche Bank. Wis. Stats. §§ 889.17, 908.03(14), (15). The Note attached to the bank's response to the debtor's amended objection to the motion for relief from the automatic stay is stamped "TRUE AND CERTIFIED COPY," although no additional certification information is provided.

13

back as 1859, and has been described as follows:

> The transfer of these notes ... carried with it, by operation of law, all securities for their payment. The debt is the principal thing, and the securities are only an incident. The transfer of the former, therefore, carries with it the right to the securities, and amounts to an equitable assignment of them. No matter what the form of the security is, whether a real-estate or chattel mortgage, or a pledge of collateral notes, bonds, or other personal property, the purchaser of the principal takes with it the right to resort to these securities; and this is so, although the assignment or transfer does not mention them. The reason of this rule, within all the authorities, seems to be that when the mortgagee transfers the debt, without assigning the mortgage or other security, he becomes a trustee, and holds the security for the benefit of the owner of the note, and the latter may enforce the trust. The debtor is in no wise injured by such rule. He has agreed that the security shall stand for the payment of the debt, and it is of no consequence to him to whom it is paid. He has to pay it but once.

*Tidioute Sav. Bank v. Libbey*, 101 Wis. 193, 77 N.W. 182, 183 (1898), *cited in* 29 Williston on Contracts § 74:51 *Assignee's Right to Security Passing with Assigned Debt* (4th Ed., updated 2011). "The rule is that the transfer of a note carries with it all security without any formal assignment or delivery, or even mention of the latter." *Tidioute*, 77 N.W. at 183 (citing *Carpenter v. Longan*, 83 U.S. 271, 276- 277 (U.S. 1873); *Croft v. Bunster*, 9 Wis. 503 (Wis. 1859)). Consequently, under the doctrine of Equitable Assignment, Deutsche Bank – in possession of the Note endorsed in blank and therefore the holder – is entitled to enforce the Note.

## CONCLUSION

Under both the Uniform Commercial Code and Wisconsin common law, MERS effectively assigned the rights and interest of Intervale to Deutsche Bank. The defendants' motion to dismiss the adversary proceeding is granted. The debtor's objection to America's Servicing Company's Proof of Claim No. 5 is overruled. Because a determination of whether cause exists to lift the automatic stay requires additional factual evidence, the debtor's objection

14

to Deutsche Bank National Trust Company's motion for relief from the automatic stay and abandonment will be scheduled for further proceedings. A separate order consistent with this decision will be entered.

December 23, 2011

Margaret Dee McGarity
United States Bankruptcy Judge